IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Crim. No. 06-153 (RWR) |
| ) | |
| EDWARD KELLY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS TAKEN IN VIOLATION OF THE UNITED STATES CONSTITUTION**[1]

Defendant Edward Kelly, through undersigned counsel, respectfully moves this Honorable Court to suppress as evidence against him at trial all evidence seized by law enforcement agents on September 2, 2004 because it was obtained without a proper search warrant. Defendant further moves to suppress all statements taken by law enforcement agents on September 2, 2004, because those statements were taken in violation of Miranda and the Fifth Amendment of the United States Constitution.

## FACTUAL ALLEGATIONS

According to discovery provided by the government, on September 1, 2004, agents of the Federal Bureau of Investigation obtained search warrants for two locations: (1) for 1526 Potomac Avenue, SE, Washington, D.C.; and (2) a 2000 Lincoln Navigator bearing Maryland tag 050M029 ("Lincoln Navigator"). The search warrants were for a firearm and related material

---

[1] Defense counsel understands that issues raised by this Motion may have been previously litigated by the United States District Court in Maryland prior to Mr. Kelly's acquittal on all charges in that jurisdiction. Defense counsel is unaware of the exact course or outcome of the pretrial litigation in that case.

(e.g., ammunition, holster).  See Ex. 1 (Warrants).  The affidavit in support of the search warrants ("Affidavit") was submitted by FBI Special Agent Cheyvoryea Gibson.  See Ex. 2 (Affidavit).  The information submitted by S/A Gibson was allegedly from two sources:  (1) a confidential informant; and (2) four intercepted telephone conversations allegedly involving defendant.

The information from the confidential informant came from an individual described as "CS-1."  The Affidavit reported that CS-1 had in the past "been administered a polygraph examination with conflicting results."  Ex. 2 (Affidavit) at 8.  The only information from CS-1 relevant to the request for a search warrant for a handgun was CS-1's statement that "on or around the week of **November 4, 2002**," CS-1 had seen defendant "with a handgun concealed within the waistband of the pants he was wearing."  See id. (emphasis added).  The Affidavit did not directly connect Mr. Kelly's alleged possession of a handgun **two years earlier** with the residence at 1526 Potomac Avenue.

With respect to the telephone conversations, the recordings of those conversations were obtained via a warrant to tap cellphone (202) 345-6849, a cellphone allegedly used by Mr. Kelly.  The cellphone warrant was issued approximately two months before the search warrant for 1526 Potomac Avenue was executed.  The cellphone warrant was issued based upon an affidavit submitted by DEA Agent Thomas F. Hickey ("Hickey Affidavit").  While containing information on other members of the alleged conspiracy (the same conspiracy that Mr. Kelly was acquitted of in May 2006), the Hickey Affidavit contains only the most cursory information concerning Mr. Kelly.  Indeed, the most that can be drawn from the Hickey Affidavit is that a member of the alleged conspiracy owed Mr. Kelly money for an unspecified debt.

While monitoring cellphone (202) 345-6849 pursuant to the warrant obtained from the Hickey Affidavit, the FBI recorded four telephone conversation that would be used in the Affidavit used to support the search warrants for 1526 Potomac Avenue and the Lincoln Navigator. Two calls occurred on July 3, 2004 and were between Mr. Kelly and his girlfriend, Lenia Cash. During the second call, Mr. Kelly allegedly advised Ms. ash to go get her "fur." In the Affidavit, S/A Gibson declares that when Mr. Kelly used the word "fur" in that conversation, he was asking Ms. Cash to get a gun. The third call is on July 4, 2004. During that call, Mr. Kelly refers to having Ms. Cash get his gun. The fourth and final call is on July 9, 2004, and concerns a conversation between Mr. Kelly and a man identified in the Affidavit as Carl Lucas. The two men joke around about Mr. Kelly shooting Mr. Lucas' dog. The entire conversation was clearly in jest, as the government has recognized in its Opposition to Mr. Kelly's motion for bond. See Gov. Bond Opp. at 3.

On September 2, 2004, the FBI conducted a search of the residence at 1526 Potomac Avenue at approximately 6:25 am. In the residence, the FBI allegedly discovered a handgun under a mattress in the bedroom and U.S. Currency. Before advising Mr. Kelly of his Miranda rights, but after finding the gun, an FBI agent asked Mr. Kelly if there was any other contraband in the apartment. Mr. Kelly allegedly stated that there was "coke" in a backpack and allegedly told the agents there was a loaded gun in the other room.

Once at the FBI Office, the government alleges that Mr. Kelly gave a full statement accepting responsibility for all of the contraband in the residence. The government asserts that Mr. Kelly was read his rights and waived them prior to making this statement. The government's evidence does not establish that any waiver was voluntary.

**DISCUSSION**

I. **THE PHYSICAL EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANTS MUST BE SUPPRESSED BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANTS DOES NOT ESTABLISH PROBABLE CAUSE TO SUPPORT A SEARCH FOR THE ITEMS LISTED IN THE WARRANT**.

The Fourth Amendment provides:

> ...and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. Amend. IV. The test for probable cause for the issuance of a search warrant is whether the facts presented to the magistrate establish a "substantial probability" that the items sought will be found at the location sought to be searched. Illinois v. Gates, 462 U.S. 213 (1983).

In United States v. Johnson, 437 F.3d 69, 71-72 (D.C. Cir. 2006), this Circuit recently took up the issue of stale information and probable cause for a search warrant. In Johnson, the warrant was obtained on March 12, 2003. The target of the warrant was the defendant's live-in boyfriend, Melvin Lawrence. The affidavit supporting the warrant relied on two types of information: (1) three controlled buys made by Mr. Lawrence to the police in April - June 2002; (2) a "chance encounter between one of the undercover officers and Mr. Lawrence at a gas station on February 4, 2003, a little more than a month before the affidavit." During that encounter, Mr. Lawrence "asked the officer for his cell phone number, and urged him to 'come around this way and holla at me for some more shit.'" Id. at 71.

The Johnson Court upheld the denial of the defendant's motion to suppress based heavily

upon the fact that "four and a half weeks before the affidavit, [the boyfriend] invited the agent to just 'holla.'"  Id. at 72.  It was also significant that the warrant was for drugs, as opposed to a gun, as a drug dealer "would still retain papers permitting him to get back in touch with his customers or–as turned out to be the case–his supplier."  Id. (quoting United States v. Webb, 255 F.3d 890, 905 (D.C. Cir. 2001)).

In this case, the staleness of the information contained in the warrant is immediately apparent.  In contrast to Johnson, where Mr. Lawrence had invited an undercover agent to purchase drugs from him just four weeks prior, the most recent information concerning Mr. Kelly's possession of a gun came from telephone conversations in early July, approximately *2 months* before the search warrant was obtained and executed.  See Schoeneman v. United States, 317 F.2d 173 (D.C. Cir. 1963) (finding a lack of probable cause based on the "great delay" of 107 days in between the observation of the criminal activity at issue and the application for a warrant).  In further contrast, the warrant in Johnson was for narcotics and related materials, which are more likely to remain in one place than a handgun.  See Johnson, 437 F.3d at 71-72.

In addition, the information regarding Mr. Kelly's gun possession from the CS concerned a gun the CS allegedly witnessed Mr. Kelly possess "during the week of **November 4, 2002**," and was therefore nearly *two years old*.  The information concerning the gun the CS allegedly saw on Mr. Kelly's person also bore no direct relationship to 1526 Potomac Avenue.  To the extent such information should be afforded any weight under the aforementioned circumstances, its value is completely undermined by the fact that the CS had also "been administered a polygraph examination with conflicting results."  Affidavit at 8.

The unreliability of the allegations in the Affidavit in this case is striking when compared

5

with those present in reported cases which have upheld search warrants because they were based on fresh, reliable information.  See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725 (1960) (Informant indicated defendants kept "ready supply" of heroin in their bedroom in a specific described location in bedroom; informant had made several purchases from said location in past; affiant had also received information from other sources that named defendants, who resided in said apartment, were engaged in current drug trafficking); United States v. Pigrum, 922 F.2d 249 (5th Cir. 1991) (Agents immediately proceeded to get search warrant after controlled purchase and searched within 2 hours of purchase; purchase made from residence of identified individual; police officers listening to purchase via transmitter); United States v. Romo, 914 F.2d 889 (7th Cir. 1990) (Purchase made from residence of defendant, who was identified by informant; purchase also made from defendant's business; informant observed large quantity of drugs and drug paraphernalia within both business and residence within 72 hours of warrant application); United States v. Harper, 802 F.2d 115 (5th Cir. 1986) (Affiant had corroborated informant by surveilling defendant's motel room, where purchase was made, and had seen several known drug dealers and users enter room; informer indicated he saw quantities of narcotics in the room other than that which he purchased; purchase made within 24 hours of issuance of warrant; informant within view of affiant from time of initial pat-down until his return, except when in motel room); United States v. Moreno, 758 F.2d 425 (9th Cir. 1985) (Purchase made from named individuals; investigation showed "heavy foot traffic" in and out of defendant's apartment; further corroboration from four anonymous telephone callers reporting suspicion of drug trafficking at defendant's apartment; defendant had previously told police that a robbery at his apartment was in retaliation for a "drug rip-off"); United States v. Thompson, 751 F.2d 300 (8th Cir. 1985)

(Informant had indicated that he had observed named individual selling drugs in defendant's residence, that defendant had a firearm, that the defendant sells drugs on a regular basis from the apartment, and that the defendant lives in the apartment with a black female exotic dancer; affiant had corroborated many details and obtained other corroborating information concerning defendant's relationship to apartment); United States v. Rodgers, 732 F.2d. 625 (8th Cir. 1984) (Within 72 hours informant had been in defendant's residence and observed large quantities of cocaine; informant later made controlled buy directly from defendant in defendant's bedroom; officers had received prior information that defendant was selling large quantities of cocaine; other officers had made other purchases of cocaine from defendant).

In contrast to the above cases, the Affidavit here alleges only stale information about Mr. Kelly's possession of a gun. Thus, this Affidavit was insufficient to establish probable cause to issue a warrant.

II. **THE PHYSICAL EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANTS MUST BE SUPPRESSED BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANTS IS BASED ON TELEPHONE CONVERSATIONS THAT WERE INTERCEPTED BASED UPON A WARRANT ISSUED WITH INSUFFICIENT PROBABLE CAUSE.**

The Affidavit submitted by DEA Agent Hickey in support of the application for a warrant for cellphone number (202) 345-6849, which was allegedly the cellphone used by Mr. Kelly, does not state sufficient facts as to Mr. Kelly so as to establish probable cause. The most that can be drawn from the Affidavit is that a member of the alleged conspiracy owed Mr. Kelly money from an unspecified debt. Because the warrant for the cellphone was not based on probable cause, the evidentiary fruits of the warrant (i.e., the evidence recovered as a result of the subsequent search warrants for 1526 Potomac Avenue and the Lincoln Navigator) must be

suppressed.  See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).

II.     **ALL STATEMENTS MADE BY MR. KELLY MUST BE SUPPRESSED BECAUSE THEY WERE MADE INVOLUNTARILY AND IN VIOLATION OF MIRANDA.**

    A.     Mr. Kelly's Statements were Involuntary

The government has alleged that Mr. Kelly made a statement or statements to police officers after a gun was found but prior to the reading of his Miranda rights.  Those statements are that there was "coke" and a loaded gun in the apartment.  Before introducing those statements at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statements were voluntary.  See Lego v. Twomey, 404 U.S. 477 (1972).  The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker."  Culombe v. Connecticut, 367 U.S. 568, 602 (1961).  The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation."  Mincey v. Arizona, 437 U.S. 385, 402 (1978).  The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily.  Fikes v. Alabama, 352 U.S. 191 (1957); see also Gallegos v. Colorado, 370 U.S. 49 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny of the facts of each individual case); Clewis v. Texas, 386 U.S. 707 (1967).

Specifically, the Court must examine the efforts to overbear Mr. Kelly's free will in relation to his capacity to resist those efforts.  Davis v. North Carolina, 384 U.S. 737 (1966); Culombe, 367 U.S. at 607.  The Court must examine Mr. Kelly's "background, experience, and

conduct," North Carolina v. Butler, 441 U.S. 369, 375 (1979), to determine whether his statements were the product of a rational intellect and a free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1980). Here, the evidence at a hearing will show that any statements made by Mr. Kelly were made involuntarily and thus must be suppressed under the Fifth Amendment.

    B.    Mr. Kelly's Pre-*Miranda* Statements were Made in Violation of *Miranda*

Even if the statements were made voluntarily, Miranda requires suppression of Mr. Kelly's statements during the government's case-in-chief because Mr. Kelly was not adequately apprised of his right against self-incrimination prior to undergoing custodial interrogation. See, e.g., Pennsylvania v. Muniz, 496 U.S. 582, 110 S. Ct. 2638, 2643-44 (1990). A person is in "custody" under Miranda when he "has been . . . deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

In this case, certain of Mr. Kelly's statements were given prior to the administration of Miranda rights. The government must therefore establish that those statements were not the product of custodial interrogation. Under the known facts and circumstances of this case, exactly the opposite appears to be the case. Accordingly, the statements must be suppressed.

    C.    Mr. Kelly's Post-Miranda Statements Must Be Suppressed Because Mr. Kelly's

<u>Statement Was Involuntary</u>

When Mr. Kelly made the alleged statements at the FBI Office, he was clearly in custody for purposes of <u>Miranda</u>. At a hearing, the government will be unable to demonstrate that Mr. Kelly was adequately apprised of his rights, nor that any waiver of his rights was knowing and voluntary. The government bears the heavy burden of establishing that proper <u>Miranda</u> warnings were given to the defendant and that an intelligent and voluntary waiver of those rights occurred prior to questioning of the defendant. <u>Miranda</u>, 384 U.S. at 475. As the Court recognized in <u>Moran v. Burbine</u>, 475 U.S. 412 (1986),

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived.

<u>Id</u>. at 421. Because the government cannot surmount this high hurdle, Mr. Kelly's allegedly post-<u>Miranda</u> statements must be suppressed.

## CONCLUSION

For the foregoing reasons, and any other reasons the Court finds just and reasonable, Mr. Kelly requests that the Court suppress the physical evidence obtained by the officers pursuant to the invalid search warrant, as well as all statements taken by law enforcement from Mr. Kelly on September 2, 2004.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____
Jonathan S. Jeffress, Esq.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Ste 550
Washington, D.C. 20004
(202) 208-7500

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. No. 06-153 (RWR) |
| EDWARD KELLY, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Upon consideration of defendant's motion to suppress, any opposition thereto, and for good cause shown, it is hereby

**ORDERED** that defendant's motion is **GRANTED**; it is further

**ORDERED** that all evidence seized from 1526 Potomac Avenue and the Lincoln Navigator on September 2, 2004 is **SUPPRESSED**; and it is further

**ORDERED** that all statements taken from Mr. Kelly on September 2, 2004 are **SUPPRESSED**.

_____
THE HONORABLE RICHARD W. ROBERTS
UNITED STATES DISTRICT JUDGE

DATE: