# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

*IN THE MATTER OF THE SEARCHES OF:)*

1.    1526 Potomac Avenue SE, Washington, DC.
2.    2000 Lincoln Navigator, bearing Maryland tag "050M029", VIN #5LMPU28A5YLJ15188

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANTS

## I. INTRODUCTION:

Your affiant, Cheyvoryea Gibson, hereby states:

1.    I have been employed as a Special Agent by the FBI since March 2003.  I am currently assigned to the Violent Crimes/Major Offender Squad, at the Washington Field Office and my responsibilities include investigation of violations of the controlled substances laws and drug-related offenses.  I have been involved in numerous narcotics-related investigations.  Previously, I was a Deputy Sheriff for the Hillsborough County Sheriff's Office, Tampa, Florida and was so employed for approximately seven years.  During my tenure as the Hillsborough County Sheriff's Office, I spent two years in uniform patrol and five years as a narcotics detective.   I have investigated in excess of 300 narcotic investigations, which have resulted in numerous arrest and convictions.

2.    I have received instruction and training and have participated in investigations involving:  unlawful importation, possession with intent to distribute and distribution of controlled substances; the illegal structuring of financial transactions, the engaging in financial transactions to promote, disguise or conceal illegal drug trafficking and the source of the proceeds derived from it

and unlawfully engaging in monetary transactions involving the proceeds of specified unlawful activity, practices commonly referred to collectively as "money laundering"; and conspiracies associated with the foregoing criminal offenses which are prohibited by Title 21, U.S.C. 841(a)(1), 843(b) and 846 and 18 U.S.C. §§ 1956, 1957. In the course of conducting or participating in these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting undercover drug operations in which drugs are purchased from persons through the use of undercover police officers and undercover agents or cooperating witnesses; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; and preparing and executing search warrants and arrest warrants which have led to seizures of narcotics, firearms, and other contraband. In addition, I have participated in the arrests of more than three hundred (300) persons that were charged with drug-related and/or violent offenses.

3.      This affidavit is submitted to establish probable cause for the search warrant, and it does not include each and every fact known to your affiant or the government.

4.      This affidavit is not intended to include each and every fact known to your affiant or the government.

**II. DESCRIPTIONS OF PREMISES.**

5.      This affidavit is respectfully submitted in support of an application for a search warrant to search the premises known as 1526 Potomac Avenue SE, Washington, DC and a 2000 Lincoln Navigator, bearing Maryland tag "050M029", VIN #5LMPU28A5YLJ15188.

## III. PROBABLE CAUSE

6.      The property is further described as a multi-level residential row house. Said property has a tan in color brick façade with white aluminum siding to the rear of the residence. The numbers 1526 are black in color and are affixed to right side of the front door, which is brown in color. Said residence also has a green side door, which is located adjacent to the garage, on the side of the residence. Throughout this investigation, Agents have learned that KELLY resides with his girlfriend Lenia Cash at the townhouse identified and described above. This fact has been corroborated on numerous occasions through surveillance of the location. Intercepted calls and surveillance show that when KELLY stated that he was in "southeast", he was at his residence, 1526 Potomac Avenue SE, Washington, DC. Through the use of the wire interceptions, Agents learned that KELLY would travel to Atlanta, GA. Surveillance was established on 1526 Potomac Avenue SE, Washington, DC on the evening of August 17, 2004. Surveillance observed KELLY depart the residence and travel to Reagan National Airport to board a flight for Atlanta, GA. On August 20, 2004, KELLY returned to the Washington, DC area. Agents were able to observe KELLY deplane, and then proceed to 1526 Potomac Avenue SE, Washington, DC via taxi cab. KELLY has been observed entering and exiting 1526 Potomac Avenue SE, Washington, DC on numerous occasions, the most recent being September 1, 2004.

7.      The vehicle is further described as a gold in color, 2000 Lincoln Navigator, bearing Maryland tag "050M029", VIN #5LMPU28A5YLJ15188. Record checks reveal that the vehicle is registered to EDWARD KENNETH KELLY and registered at 3415 Glenn Drive, Suitland, MD. This Glenn Drive address has been identified through surveillance and investigation as that of his parents.

8.      Through the investigation, initiated by the DEA, FBI and MPD, a narcotics distribution operation using acts of violence, to include homicide, to facilitate its operations was identified.   The organization is lead by RICHARD DONNELL BRISCOE, hereinafter referred to as R. BRISCOE.   For clarity, your Affiant will refer to the targets of the investigation as the

## RICHARD BRISCOE ORGANIZATION (RBO)

9.      The RBO is responsible for the distribution of multi-kilogram quantities of crack cocaine.   This organization has historically been linked to other crimes which include racketeering, money laundering, acts of violence including murder, assault with intent to kill, robbery, burglary, auto theft, armored car robbery, bank robbery, and witness intimidation in the Washington D.C. Metropolitan area.

10.      RICHARD "BONES" BRISCOE, a target of this investigation, has an extensive criminal history as determined through record checks of NCIC and WALES, for crimes such as burglary, trespassing, assault, assault with the intent to kill, domestic assault, possession of a control substance, possession of a controlled substance with the intent to distribute, homicide, carrying a concealed firearm, carrying a pistol without a license dating from 1984 to the present. Criminal history checks on KELLY revealed that KELLY has been arrested on numerous occasions for crimes such as assault with a deadly weapon (knife), unlawful manufacture, and three counts of assault with intent to murder.   In addition, in June of 1995, KELLY was convicted of distribution of cocaine, and conspiracy to import cocaine in the state of Maryland and was sentenced to 40 years incarceration.

11.      On June 25, 2004, the Honorable Deborah K. Chasanow, United States District Judge, District of Maryland, signed an order authorizing the interception of wire communications on

cellular telephone (202)345-6849. The telephone is subscribed to Lenia CASH, 1526 Potomac Avenue SE, Washington, DC, and utilized by Edward Kenneth KELLY, Jr. Throughout the course of the investigation, KELLY has been identified as a close associate of the RBO and is responsible for moving large quantities of cocaine in the furtherance of the RBO.

12.     Your affiant asserts that the facts contained below, which are derived from the intercepted telephone calls, establish probable cause to believe that the fruit, evidence and instrumentality's of violations of the laws of the United States, specifically 18 U.S.C. §§ 922 (g) are presently to be found in the premises located at 1536 Potomac Avenue Se, Washington, DC.

13.     Telephone call number 883, an outgoing call, was intercepted on July 3, 2004, at approximately 11:25 pm. KELLY called his girlfriend, Lenia CASH at cellular telephone number (202) 345-4416. This telephone is subscribed to LENIA CASH. During this off-hook conversation, KELLY is overheard talking to an unknown individual. KELLY states that, "I don't even know man, we don't even club. We work hard and come in and chill and that's it....!" Lenia CASH then answers the telephone and begins stating "Hello, hello." KELLY then whispers to Lenia CASH, "Unlock the door, but don't open it!" KELLY then resumes his conversation with the unknown male, "Nah, we cool dawg, enjoy the holidays, alright."

14.     In a subsequent telephone call, call number 884, an outgoing call, was intercepted on July 3, 2004, at approximately 11:26 pm. KELLY again called his girlfriend, Lenia CASH at cellular telephone number (202) 345-4416. During this intercepted call, Lenia CASH answers the telephone and says, "Hello", KELLY replies "Yeah, go ahead and lock the door back. Get your fur from under the pillow, that one already ready to go, put the other on back on the couch, I'll be back in a minute!"

Lenia CASH replies, "Alright"

15.    Your affiant believes that based upon the above telephone calls, KELLY was being approached by an unknown individual(s) on the street near his residence located at 1526 Potomac Avenue SE, Washington, DC. Your affiant believes that based upon the intercepted conversation, KELLY was in fear that he was about to be robbed and therefore telephoned Lenia CASH to unlock the front door, but not open it. Your affiant further believes that in the subsequent telephone call that was placed to Lenia CASH, KELLY instructs CASH to "Get you fur from under the pillow, that one already ready to go." Your affiant believes that KELLY was referring to a handgun when he used the term "fur." Throughout the course of this investigation, KELLY and other members of the RBO are very cautious when making reference to illegal activity or illegal contraband over the telephone.

16.    Telephone call number 1035, an outgoing call, was intercepted on July 4, 2004, at approximately 21:44 pm. KELLY called his girlfriend, Lenia CASH at cellular telephone number (202) 345-4416. This telephone is subscribed to LENIA CASH. During this call, CASH answers the telephone, "Hello!" KELLY then asked CASH, "Yeah shorty, where you at?" CASH answers, "Out front." KELLY states, "Outside?" CASH replies, "an hm." KELLY then states, "Oh naw, I thought you all were in DC or something, close by the house!" CASH replies, "We was." KELLY then tells CASH "Don't worry about it." CASH then ask KELLY, "I'm outside now, what you wanted?" KELLY then answers, "MY FUCKING GUN!!" CASH replies, "Oh naw, I'm out front now!" KELLY replies, "Alright."

17.    Your affiant believes that based upon this intercepted telephone call, KELLY was attempting to ascertain CASH's whereabouts, to determine if she was in the vicinity of their residence located at 1526 Potomac Avenue SE, WDC, to bring him his gun. Often times, members

of the RBO use various terminology to refer to illegal activity over the telephone, however during this telephone call, KELLY clearly states that wanted CASH to bring him his gun.

18.    Telephone call number 1814, an incoming call, was intercepted on July 9, 2004, at approximately 12:50 pm. KELLY received a call from a cellular telephone number of (202) 486-8705. Records indicate that this telephone is subscribe to CARL LUCAS. During the call, LUCAS stated, "Hello, Edward." and KELLY replied, "Yo!" LUCAS then asked, "Edward Kelly?" And KELLY stated, "What's the deal?" LUCAS asked KELLY, "What are you doing sitting in front of my damn house nigger?" KELLY replied, "I ain't sitting in front of your house!" LUCAS stated, "I'll let me motherfucking, I'll let my dog out on your ass hear!" KELLY stated, "I ain't scared of your dog!" LUCAS then replied, "Well you better not shoot him either!" KELLY replied, "I'll let my 9mm out on him...you know what I'm saying!" Your affiant further believes that based upon this intercepted telephone call, KELLY was outside of LUCAS' home, and had concealed a handgun in his 2000 Lincoln Navigator, bearing Maryland tag, "050M029." A Maryland DMV check revealed that this vehicle is registered to Edward Kenneth KELLY, Jr. Your affiant has also learned that members of the RBO, utilize "after market" hidden compartments to conceal contraband within their vehicle. Your affiant and other agents have seized vehicles associated with the RBO that have contained such hidden compartments. These hidden compartments are designed for the purpose of transporting contraband while avoiding detection by law enforcement.

19.    CS-1 has been cooperating with the United States Department of Justice, Federal Bureau of Investigations (FBI) and the Drug Enforcement Administration (DEA) since July 2003. CS-1 is currently incarcerated on federal charges not related to the current investigation of the RBO. CS-1 is a past member of the RBO and is aware of the RBO methods of distribution, and goals of

Page 8 of 12

the organization. CS-1 has provided substantial information to investigators regarding the **RBO**

Much of this information has been corroborated to the extent possible through independent

investigation. Your Affiant knows of no information provided by CS-1, which has been shown to

be intentionally false or misleading. Your Affiant is aware, however, that CS-1 has been

administered a polygraph examination with conflicting results.

20.     The identity of the individual referred to as CS-1 has been concealed out of fear of

retribution by those described in this affidavit. CS-1 was a high level member of the **RBO** and had

been for a substantial number of years. CS-1 has agreed, however, to testify at the conclusion of the

investigation if necessary. CS-1 stated that CS-1 has known **KELLY** almost all of CS-1 life and has

known **KELLY** to be involved with the distribution of cocaine since the late 1980's early 1990's.

21.     CS-1 stated that prior to being incarcerated on Bank Robbery charges out of the

District of Maryland, CS-1 stated that on or around the week of November 4, 2002, CS-1 stated that

he/she observed **KELLY** with a handgun that was concealed within the waistband of the pants that

he was wearing. CS-1 also stated that he/she has always known **KELLY** to carry firearms on his

person in the past.

22.     In the affiant's experience, individuals who possess and/or carry firearms on the street

or in their cars, often keep items related to their crime in their premises, in their vehicles, in the

premises of friends and/or in the premises of family members. These items include but are not

limited to, other firearms, ammunition, cleaning kits, holsters, papers related to the ownership of

firearms and expended ammunition cartridges, which are kept as souvenirs.

23.    Based upon my professional training, my experience as an agent enforcing criminal

laws against illegal gun possession, and my work with other veteran police officers and detectives,

I can state the following:

a.    That persons who keep or carry guns illegally commonly retain items

associated with their firearms long after they have bought or got the guns,

including the original manufacturer's packaging, gun-cleaning equipment, and

additional parts, such as gun-sights; and, that these are almost always stored

in the gun-possessor's home; in particular, gun-cleaning equipment, which is

excellent evidence of illegal gun possession, normally is not carried on a

person with a gun, but kept at home, to be used periodically to keep a gun in

shape or good working order; and,

b.    That such gun possessors buy or get and keep in storage extra ammunition for

their firearms, beyond the immediate capacity of the particular firearm; and,

that they keep such additional ammunition in their homes; among the main

reasons for this is that the smallest amount of bullets that commonly can be

bought from a gun shop is a 50-round box or brick; this is a standard size

bought at gun shops across the District of Columbia in Prince George's

County, Md.; few if any guns have a capacity of 50 rounds, and thus most

persons who have guns must have bullets kept or stored outside a gun that is

being carried personally;

c.    That, it is quite common for a person who possesses one firearm to own or

possess additional firearms, and, that it is common for a person who is found

carrying a firearm on his person to have stored at home one or more

additional firearms, along with additional ammunition, and papers related to

the acquisition of that firearm; this is particularly so if the person who is

found carrying the firearm has ties to illegal narcotic-trafficking.

d.    That many persons who illegally possess guns often have pictures taken of

themselves individually or of themselves with friends in which they display

their gun or guns, and that these pictures, themselves excellent evidence of

illegal gun possession, commonly are kept at the gun possessor's home or in

their room at their homes, along with gun paraphernalia;

e.    That, even after an individual's arrest for gun-related charges, the person's

family and associates commonly do not dispose of other firearms, or

ammunition; and, even if they do get rid of other guns, they are much less

likely to get rid of ammunition, possession of which almost always is a crime

in Washington, D.C.; further, that hardly ever do such associates remove or

get rid of gun packaging or cleaning equipment or photographs of a person

with a gun; and that such items will remain at the arrested individual's home

for a considerable period of time after such an arrest.

Based on my experience investigating illegal drug traffickers, there is probable cause to

believe that **1526 Potomac Avenue SE, Washington, DC, and a 2000 Lincoln Navigator, bearing**

**Maryland tag "050M029", VIN #5LMPU28A5YLJ15188,** which contains documents, records,

and related materials, as reflected in Attachment A, which is incorporated herein.

## IV. CONCLUSION:

24.    Your affiant asserts that the facts contained within this affidavit establish probable cause to believe that the fruit, evidence and instrumentality's of violations of the laws of the United States, specifically 18 U.S.C. §§ 922 (g) are presently to be found in the above-listed premises. Therefore, in light of the circumstances and the evidence adduced from this investigation, your affiant respectfully submits that probable cause exists for the issuance of search warrants for the target location outlined above.

_____
Affiant
Chevvoryea Gibson, Special Agent
Federal Bureau of Investigation
United States Department of Justice

Sworn and subscribed to before me this ___ 0 1 day of September 2004.

_____

UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE

**ATTACHMENT A**

a.    Firearm and/or ammunition

b.    Documentation or paperwork related to the possession, acquisition, disposition, and/or maintenance of firearms

c.    Ammunition magazines, ammunition boxes, holsters, ammunition pouches, firearms boxes, cleaning kits

d.    Bullet proof vests, firearm parts, and accessories for firearms such as grips, scopes, and slings

e.    Photographs of firearms

f.    Paperwork and documentation related to the identify of the possessors of such items and/or vehicle.

g.    Indicia of occupancy, residence, and/or ownership of the premises described in the affidavit, but not limited to, utility and telephone bills, canceled envelopes, keys, and other records