**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO.  06-153 (RWR)** |
| | : | |
| **EDWARD KENNETH KELLY, JR.** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**UNITED STATES' MEMORANDUM**
**IN AID OF SENTENCING AND MOTION FOR THREE POINT REDUCTION**

The United States of America, by and through its attorney, the United States Attorney for the

District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing and Motion

for Three Point Reduction, recommending that the defendant be sentenced to 46 months of

incarceration on Count One (minus the period of time the defendant was incarcerated from

December 16, 2004, and May 8, 2006, before charges were formally brought in this case), and 60

consecutive months of incarceration on Count Three, followed by a five year period of supervised

release.  In support thereof, the United States respectfully states the following:

<u>Background</u>

1.     In June 2004, based on information obtained during an ongoing investigation by the

Federal Bureau of Investigation ("FBI") and other law enforcement agencies, FBI Special Agent

Cheyvoryea Gibson applied for and obtained an order authorizing law enforcement to intercept and

record telephone conversations on cellphone number (202) 345-6849, the defendant's telephone,

which was subscribed to by his girlfriend, Lenia Cash, at 1526 Potomac Avenue, S.E., Washington,

D.C.  As a result of the wire tap, the agents learned that on July 4, 2004, the defendant made an outgoing call to (202) 345-4416, another phone registered to Lenia Cash, which she used personally. During the conversation, the defendant, a convicted felon, told Ms. Cash he wanted his gun.   The conversation occurred as follows:

|  |  |
|---|---|
| Ms. Cash: | Hello. |
| Defendant: | Yeah, Shorty.  Where you at? |
| Ms. Cash: | Out front. |
| Defendant: | Outside? |
| Ms. Cash: | Uh, huh. |
| Defendant: | Oh, now, I thought y'all was in D.C. or something close by the house. |
| Ms. Cash: | Uh, we was. |
| Defendant: | Okay, don't worry about it. |
| Ms. Cash: | Why, what you wanted? |
| Defendant: | My fuckin' gun. |
| Ms. Cash: | Oh, no I'm over, I'm out front now, huh. |
| Defendant: | Alright, alright. |

In another telephone conversation, on July 9, 2004, the defendant received a call from his friend Carl Lucas, who joked that he was going to send his dog after the defendant.  The defendant joked in response that he was not afraid of the dog because he (the defendant) would use his 9 mm (handgun) on the dog.

2.     The wire tap concluded on August 28, 2004, and, on September 1, 2004, Special Agent Gibson applied for and obtained warrants to search the defendant's residence at 1526 Potomac

Avenue, S.E., Washington, D.C., and his Lincoln Navigator, for evidence and instrumentalities of violations of the laws of the United States, specifically Title 18, Section 922(g). On September 2, 2004, pursuant to the search warrant, a search was conducted at the basement unit of 1526 Potomac Avenue, S.E., Washington, D.C., and on the defendant's Lincoln Navigator, which was parked outside the residence. Special Agent Carlton Peeples conducted the knock and announce on the basement door at 1526 Potomac Avenue, S.E., and the door was broken through at 6:37 a.m. The individuals present in the small one-bedroom apartment were the defendant and his girlfriend, Lenia Cash. Agents located the defendant's backpack in the living room, which contained two plastic bags that contained a total of 497.1 grams of cocaine hydrochloride. Under the mattress in the adjacent bedroom, approximately 20 feet away from the cocaine, agents found a Glock 9mm handgun, bearing serial number AFK510US. The gun was loaded with 9 mm ammunition. Agents recovered approximately $46,500 in U.S. currency from inside the apartment, as well as numerous photographs of the defendant and additional documents addressed or belonging to him. The agents also recovered $585 from the defendant's Navigator.

     3.     During the search, while the defendant was being escorted to the bathroom, the defendant expressed to agent David Buckel that the gun found in the bedroom was his. Later, at the FBI Office, at approximately 7:35 a.m., the defendant was advised of and waived his rights by reading the FBI "Advice of Rights" form (FD-395) aloud and completing the form by writing his initials by each line and his signature below. The defendant stated that the gun and drugs found by the agents in the apartment were his, and that Ms. Cash was not aware of the drugs. He stated he had been consistently residing at 1526 Potomac Avenue, with Ms. Cash, for the past year. According to Ms. Cash, only she and the defendant had been living or staying at the apartment. Ms. Cash also

later stated that only about $5,000 of the cash recovered in her home belonged to her.

4.    As a result of this conduct, the defendant was charged in a three-count indictment with Unlawful Possession with Intent to Distribute Cocaine (Count One), in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) ("PWID Cocaine"); Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (Count Two), in violation of 18 U.S.C. § 922(g)(1); and Using, Carrying and Possessing A Firearm During a Drug Trafficking Offense (Count Three), in violation of Title 18, United States Code, Section 924(c)(1) ("Possessing A Firearm During a Drug Trafficking Offense").

5.    On November 2, 2006, the defendant pled guilty pursuant to an agreement with the government to Counts One and Three of the indictment charging him with PWID Cocaine and Possessing A Firearm During a Drug Trafficking Offense. Under Count One, the defendant may be sentenced up to 20 years of imprisonment, at least 3 years of supervised release, and a fine up to $1,000,000 pursuant to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C). Under Count Three, the defendant may be sentenced up to life with a minimum, consecutive term of 5 years imprisonment under Title 18, United States Code, Section 924(c); not more than 5 years of supervised release pursuant to Title 18, United States Code, Section 3583(b)(1); a fine up to $250,000 pursuant to Title 18, United States Code, Section 3571(b)(3). Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), there is a mandatory special assessment of $100 for each count to which the defendant pled.

<u>Sentencing Guidelines</u>

6.    As set forth in the Presentence Investigation Report ("PSR"), under the guidelines and

policies promulgated by the United States Sentencing Commission, Guidelines Manual (hereinafter "Sentencing Guidelines" or "U.S.S.G."), the defendant's criminal history score is 5 points, placing him in criminal history Category Three. U.S.S.G. Chapter 5, Part A. For Count One, the defendant's total offense level is 21, having pled guilty to one count of PWID Cocaine for an amount of 497.1 grams of cocaine. U.S.S.G. §§ 2D1.1(a)(3), 2D1.1.( c)(8) and 3E1.1. Based on a total offense level of 21 and his placement in criminal history Category Three, the defendant's Sentencing Guidelines range for Count One is 46 to 57 months of imprisonment. U.S.S.G. Chapter 5, Part A. The Guidelines provide for a term of supervised release of at least three years for Count One. U.S.S.G. §5D1.2(c). With respect to Count Three, the Sentencing Guidelines range is the statutory mandatory minimum sentence of 5 years imprisonment, which by statute must be imposed consecutive to the sentence given for Count One. U.S.S.G. §2K2.4(b). The Guidelines provide for a term of supervised release of at least 3 years but not more than 5 years for Count Three. U.S.S.G. §5D1.2(a)(1). The fine range recommended under the Sentencing Guidelines is from $7,500 to $1,000,000. U.S.S.G. §5E1.2(c)(3) and (4).

## Plea Agreement

7.     Consistent with the plea agreement, the government hereby moves the Court to dismiss Count Two of the indictment, charging the defendant with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). In addition, the government moves the Court for a 3-point reduction in the defendant's offense level pursuant to Section 3E1.1 of the Sentencing Guidelines based on his early acceptance of responsibility. Under the plea agreement, the government agreed that it would not oppose a sentence of incarceration at the low end of the

defendant's applicable guideline range. The government also agreed not to oppose a request by the defendant for a reduction in his sentence based on credit for time served since his arrest in criminal case United States v. Richard Briscoe, et al., 04-0559 (AW) (D. Md.), on December 16, 2004. The parties further agreed that a sentence within the applicable Guidelines range would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a), and that neither party would seek a sentence outside of the applicable Guidelines range or suggest that the Court consider a sentence outside of the applicable Guidelines range, except with respect to the defendant's request for a reduction in his sentence based on credit for time served since his arrest in criminal case United States v. Richard Briscoe, et al., 04-0559 (AW) (D. Md.), on December 16, 2004.

Sentencing Recommendation

8.      The government recommends that the defendant be sentenced to the low end of his applicable range of incarceration under the Sentencing Guidelines (i.e., 46 months for Count One and 60 months for Count Three), minus the amount of time the defendant was incarcerated as a result of his detention in the related criminal case United States v. Richard Briscoe, et al., 04-0559 (AW) (D. Md.). Prior to being formally charged in this case, the defendant was held in United States v. Richard Briscoe, et al., 04-0559 (AW) (D. Md.), in which the defendant was charged in Maryland as part of a larger drug trafficking conspiracy (the "Maryland conspiracy case"). Although the same conduct giving rise to the instant case was pled as a predicate act in the Maryland conspiracy case, the government decided not to charge the defendant in the District in Columbia while the Maryland case was being litigated. The government's belief was that simultaneous prosecutions would be a waste of resources, and that a conviction in the Maryland conspiracy case would suffice. The

defendant was held in the Maryland conspiracy case from the date of his arrest on December 16, 2004, until his acquittal on May 8, 2006. He was arrested and charged in the instant case immediately thereafter, and has been held in the instant case since May 9, 2006, when he was formally presented in this case. Because the defendant has been held for his conduct since December 16, 2004, but can only receive credit for time served in this case since May 9, 2006, the government believes that principles of fairness require that the defendant receive a reduction in his sentence for the amount of time he was held from December 16, 2004, through May 8, 2006; i.e., 16 months and 22 days. Accordingly, the government recommends that the defendant be sentenced to a total of 29 months and 8 days of incarceration on Count One, 60 consecutive months of incarceration on Count Three, followed by a 5-year period of supervised release for each count to run concurrent with one another.

9.    The Government's recommendation, which is based on the low end of the defendant's applicable Sentencing Guidelines range, with credit for time the defendant served in the Maryland conspiracy case, is reasonable. In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment. The Court invalidated the statutory provision that made the Guidelines mandatory: Title 18, United States Code, Section 3553(b)(1). Booker, 124 S. Ct. at 764. The Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18

-7-

U.S.C. § 3554(c)(2).  The sentence will then be subject to review by courts of appeals for "reasonableness."  <u>Booker</u>, 124 S. Ct. at 766.

10.     In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines.  <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing).  "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u>, 124 S. Ct. at 767 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)).   In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se.  Not only is a sentence within the Guidelines range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.  A sentence of 46 months incarceration for Count One, minus the period of time the defendant was incarcerated in the Maryland conspiracy case, plus the mandatory 60 consecutive months of incarceration for Count Three, satisfies this goal.

11.     A sentence based on the Sentencing Guidelines range is not only presumptively reasonable for the reasons outlined above, but it is reasonable and appropriate for this defendant based on the facts of this case when viewed in conjunction with the defendant's criminal history. The recommended sentence of 106 months of incarceration, minus the period of time the defendant served in the Maryland conspiracy case, is also supported by the factors to be considered by courts as articulated in 18 U.S.C. § 3553(a).  This provision provides, in pertinent part, that when

fashioning a sentence, courts should consider (1) the circumstances surrounding the instant offense and the defendant's criminal history, (2) the seriousness of the offense and the need to promote respect for the law and punishment, (3) potential deterrence, (4) protecting the public, and (5) the rehabilitative needs of the defendant.  Id.

12.     Nature and Circumstances of the Offense.  The first factor, the nature and circumstances of the offense, favors a sentence at the low end of the defendant's Sentencing Guidelines range.  The defendant is guilty of possession with the intent to distribute 497.1 grams of powder cocaine, a large amount of narcotics having a potential resale value over $15,000.00.  The agents recovered the defendant's loaded semiautomatic handgun from under the mattress of the defendant's bed.  The defendant admitted that he possessed the gun with the purpose of protecting not only himself but also the possessions that were inside his apartment.  Even worse, the telephone conversations recorded by the FBI in July 2004 demonstrate that the defendant used his gun outside his residence as well.  During the search, the agents recovered over $47,000 from the defendant's residence and vehicle, which is a large amount of cash considering the relatively small amount of income the defendant had earned from his reported employment since 2002.  The amount of drugs in the defendant's home, his possession of a loaded firearm, and the amount of cash in his home support the conclusion that the defendant was significantly involved in the business of drug distribution.

13.     The Defendant Criminal History.  The defendant's conduct in this case is consistent with his prior criminal history.  The defendant had previously been convicted twice, in 1989 and in 1995, for distributing cocaine, the same narcotic he pled guilty to possessing with the intent to distribute in the instant case.  Furthermore, the circumstances surrounding the defendant's 1995

convictions in Maryland Criminal Case No. CT941969A demonstrate that he was involved in a large scale drug distribution operation at the time of his arrest in October 1994. The defendant pled guilty to two counts in that case: Count Four charging him with distribution of cocaine on September 14, 1994, and Count Ten charging him with conspiracy to import cocaine between on or about April 1, 1994, and October 12, 1994. A copy of the defendant's certified convictions in Criminal Case CT941969A is attached hereto as Exhibit A. During that time, the Drug Enforcement Administration ("DEA") was investigating the defendant for heading a drug trafficking organization in the Washington, D.C. metropolitan area that purchased large amounts of cocaine from an individual named Freddy Lasso, known to law enforcement officials as Jerry, who was the head of a Colombian cocaine distribution organization based in Queens, New York. In a declaration authored by DEA Agent Michael Lucia for submission to the court in a civil forfeiture case related to the defendant's 1995 conspiracy conviction, Agent Lucia provided a description of the facts that led to the defendant's guilty plea in his 1995 conspiracy conviction. A copy of the declaration is attached hereto as Exhibit B.

14.    In his declaration, Agent Lucia stated that as part of his investigation, on May 2, 1994, at approximately 6:35 p.m., he observed the defendant, Edward Kelly, arrive in his 1994 Toyota Camry at the New Carrollton Metro Station, and drop off two individuals, Carl Russell Morris ("Morris") and Stephanie Elizabeth Kellogg ("Kellogg"), who entered the AMRTAK terminal. Morris was carrying a black gym bag. Based on telephone conversations intercepted by law enforcement, Agent Lucia was aware that the bag contained a large amount of money that the defendant had directed Morris and Kellogg to deliver to Freddy Lasso for the purpose of purchasing several kilograms of cocaine. A law enforcement official intercepted Morris and Kellogg on the

AMRTAK platform and seized the gym bag, which contained $133,536.  Morris also had a document in his possession on which the pager number (917) 982-3355 and the name "Jerry" were written.  Law enforcement had previously determined that the pager number was used by Freddy Lasso.  The currency seized from Morris, who was acting as a courier for the defendant, was ultimately forfeited as illegal drug proceeds in civil case United States v. $133,536 in United States Currency, 95-00948 (D. Md.), on November 7, 1995.

15.     As a result of the long term investigation, law enforcement obtained a search warrant in October 1994 for the defendant's residence located at 14407 Dolbrook Lane, Mitchellville, Maryland.  The search warrant was executed and the defendant was arrested on October 12, 1994.  As stated in Agent Lucia's declaration, during the execution of the search warrant, the defendant was found in possession of a Sig Sauer 9 mm semiautomatic hang gun and approximately $20,000.  Also seized during the search were a Glock 9mm semiautomatic handgun, a Fratelli .41 caliber handgun, a Barretta .22 caliber handgun, a 12 gauge shotgun, as well as an additional $22,000.

16.     The amount of money recovered at the AMTRAK terminal on May 2, 1994, and the amount of money and number of weapons recovered from the defendant's home on October 12, 1994, provide significant evidence that the defendant was involved in a large scale drug distribution operation at the time he was arrested in 1994, leading to his 1995 guilty plea for conspiracy to import cocaine.  Similarly, the amount of money recovered from the defendant's home and vehicle in the instant case, over $47,000, as a result of the execution of the search warrant on September 2, 2004, support the conclusion that he was again involved in the drug trafficking of substantial amounts of drugs.  The defendant's record of employment and reported income since his release in 2002 simply do not substantiate the accumulation of that amount of cash in the defendant's home.  Rather, the

Court should conclude that the money (or at least a large portion of the money) represents illegal drug trafficking proceeds.  Having now been convicted of a drug trafficking offense for the third time, the defendant's conduct should be dealt with as a serious offense, and he should be sentenced in the manner recommended by the government, consistent with the Sentencing Guidelines.

17.    Deterrence and Protecting the Community.  A sentence at the low end of the defendant's Sentencing Guidelines range furthers the goals of deterrence and protecting the community from these types of crimes.  The defendant is clearly a danger to the community.  The factors highlighted by the defense during the course of this case and his family members in the PSR (i.e., his strong ties to the community and to his family and his ability to maintain a job) in support of his early release did not prevent him from committing drug trafficking offenses in the past, for which he has now been convicted three times.  The distribution of narcotics, such as cocaine, is a serious offense.  Indeed, the business of distribution of drugs is an inherently dangerous activity, subjecting the community to the proliferation of and use of dangerous weapons.  See e.g., United States v. Jenkins, 928 F.2d 1175, 1180 (1991) (D.C. Cir. 1991) (permitting government's expert to testify that those who deal drugs typically keep firearms for protection, reasoning that "[w]eapons are, in short, tools of the trade," and admitting ammunition as 404(b) evidence).  Along those lines, and further demonstrating the danger posed by the defendant, he is guilty of possessing a loaded, semiautomatic firearm at the time of the offense in this case.  Early release of the defendant would subject the community to further risk of narcotics distribution and potential gun violence and would signal to the community that these crimes do not carry serious penal consequences.  The government's recommended sentence accomplishes the goal of protecting the community from the commission of further drug distribution and weapon offenses by the defendant himself, as well as

serving the goal of deterring other individuals in the community, including the defendant's associates, from committing these types of offenses.

18.    <u>The Defendant's Rehabilitative Needs</u>. With respect to the defendant's rehabilitative needs, the defendant was on probation when he committed the offenses in this case. The defendant has made a career of dealing cocaine, having been convicted of drug trafficking offenses in each of the last three decades. He has already been given sufficient opportunity to prove himself to the Court and the community. The defendant's track record suggests he is not amenable to reforming his behavior and that his premature release would cause likely harm to the community. A sentence consistent with the Sentencing Guidelines range is therefore necessary.

WHEREFORE, based upon the above discussion, and the information reflected in the presentence report, the United States respectfully recommends a period of 29 months of incarceration on Count One and 60 consecutive months of incarceration on Count Three, followed by 5 years of supervised release.

Respectfully,

JEFFREY A. TAYLOR
United States Attorney


By: _____/s/_____
PERHAM GORJI
ASSISTANT UNITED STATES ATTORNEY
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4233
Washington, D.C. 20530
Phone: (202) 353-8822
Fax: (202) 616-3782

-13-

EXHIBIT A

[Copy of Defendant's Certified 1995 Conviction in Maryland Criminal Case No. CT941969A]

EXHIBIT B

[Declaration by DEA Agent Michael Lucia]

CERTIFICATE OF SERVICE

I hereby certify that a copy of the United States' Memorandum in Aid of Sentencing and Motion for Three Point Reduction was served by first class mail upon counsel of record for the defendant, Jonathan Jeffress, Federal Public Defender, 625 Indiana Avenue, NW, Suite 550, Washington, DC 20004, this 16th day of January, 2007.

_____/s/_____

PERHAM GORJI, AUSA
