UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,         )<br>                                                          )<br>           v.                                        )     Crim. No. 06-153 (RWR)<br>                                                          )<br>EDWARD KELLY,                              )<br>                                                          )<br>           Defendant.                          )<br>                                                          ) | |

**DEFENDANT EDWARD KELLY'S MEMORANDUM IN AID OF SENTENCING**

Mr. Edward Kelly, the defendant, through undersigned counsel, respectfully submits this Memorandum In Aid of Sentencing to assist the Court and to supplement the information contained in the Presentence Investigation Report ("PSR").[1] Despite Mr. Kelly's drug convictions in this case and before, the Court need look no further than the information contained in the PSR, and the strong support from his family and friends throughout <u>over two years</u> of pretrial detention and Court proceedings, to recognize that Mr. Kelly is a fundamentally good person. Furthermore, though not realized to date, Mr. Kelly clearly has very significant potential, both in terms of future employment and in family life. The defense respectfully submits that there is good reason to be optimistic that Mr. Kelly will realize this potential upon his release from prison.

---

[1] As the Court is aware, under the plea agreement in this case, neither party may seek a sentence outside of the applicable Guidelines range, except with respect to defendant's request for a reduction in his sentence based on credit for time served since his December 16, 2004 arrest in criminal case <u>United States v. Richard Briscoe</u>, 04-559 (AW) (D. Md.) on December 16, 2004.

**BACKGROUND**

On June 1, 2006, the grand jury returned a three-count indictment charging Mr. Kelly with one count of PWID cocaine; one count of possession of a firearm by a convicted felon; and one count of using, carrying and possessing a firearm during and in relation to a drug trafficking offense. As the Court will note from the Indictment, the offense conduct in this case allegedly occurred on **September 2, 2004**.

In December 2004, Mr. Kelly was arrested on conspiracy charges brought in U.S. District Court in Greenbelt, Maryland.[2] Those conspiracy charges involved, inter alia, the same conduct at issue in this case, i.e., the September 2, 2004 offense conduct. Mr. Kelly was held without bond pending trial. On or about May 8, 2006, Mr. Kelly was acquitted of all charges. The same day, the government filed a criminal complaint in this Court charging certain overt acts from the conspiracy case as substantive offenses in this Court.

On May 12, 2006, Magistrate William Connelly of the United States District Court for Greenbelt, Maryland, issued a detention order holding Mr. Kelly without bond under the new Complaint based on alleged dangerousness. See Ex. 1 (Magistrate Connelly's Detention Order). The Magistrate's order noted, however, that the "inherent fairness" issues involved in Mr. Kelly's continued detention after almost 18 months were "unresolved" by that court. The Magistrate further noted Mr. Kelly's "strong community ties," including the fact that Mr. Kelly's

---

[2] The government's Memorandum In Aid of Sentencing spends devotes an inordinate number of pages to discussing the circumstances of the Greenbelt case – where Mr. Kelly was *acquitted* – as well as a 1994 conviction for offense conduct that took place well over 13 years ago.

two children (ages 12 and 20), his mother, and all four siblings all reside in the Washington, D.C. area. The Magistrate also noted that Mr. Kelly has two relatives, Raymond D. Elliott (brother-in-law) and Frances L. Kelly (mother) who were suitable third party custodians, and who were willing to put up the equity in both of their homes in order to assist in Mr. Kelly's release. It was also noted that Mr. Kelly had employment available as a driver with Eagle Van Lines.

On May 17, 2006, Magistrate Judge Alan Kay ordered Mr. Kelly's continued detention. Magistrate Kay stated, however, that Mr. Kelly could revisit the issue with the District Court Judge following indictment. This Court heard and denied Mr. Kelly's motion for bond review n July 2006. Given Mr. Kelly's pretrial detention in the Greenbelt case, Mr. Kelly has now been incarcerated in pretrial detention status for well over two years.

## **DISCUSSION**

Among other factors the Court should consider in determining a sentence in this case, Mr. Kelly respectfully submits the Court should consider the following:

**A.    Mr. Kelly's Strong Family and Community Ties.**

Mr. Kelly is now 42 years old. He has a loving, committed relationship with his girlfriend of many years, Lenia Cash. Ms. Cash and Mr. Kelly had lived together in their small apartment on Potomac Avenue for several years at the time of Mr. Kelly's arrest.

Mr. Kelly has two daughters, ages 12 and 20. While incarcerated in Greenbelt, Mr. Kelly also became a grandfather for the first time. In addition, Mr. Kelly's mother and all four siblings reside here in the Washington, D.C. area. Mr. Kelly is very close with his sister, Veronica Kelly, who has attended all the court hearings in this matter and has closely followed this case and supported her brother.

Mr. Kelly is exceptionally close to his family, as is apparent from the letters submitted in his support and his family's continuing involvement in his case (even after over two years of court proceedings, between this case and Greenbelt). See Ex. 2 (letters of support from Mr. Kelly's family). The Court may also consider the past willingness of two family members to post the equity in their homes in order for Mr. Kelly to have received pretrial release in this case.[3] See id.

**B.    Mr. Kelly's Employment History**. Mr. Kelly was awarded a high school diploma in December 1998. See Ex. 3. On July 29, 2002, he accepted a job as a warehouseman at Eagle Van Lines, and truly excelled in that position. See Ex. 4 (Letter from Eagle Van Lines). The attached letter from Mr. Kelly's supervisor, Anthony Williams, is unqualified in its praise for Mr. Kelly's job performance. See id. Furthermore, on December 12, 2003, Mr. Kelly was awarded a certificate of 200 hours of Residence Training by Alliance Tractor-Trailer Training Centers. His attendance at the Alliance School was perfect. See Ex. 5 (Alliance Certificate of Completion and Alliance Perfect Attendance Certificate). As a result of his training, Mr. Kelly obtained a commercial driver's license in 2004. See PSR ¶ 70. But for his incarceration, Mr. Kelly would have worked towards purchasing a dump truck of his own and beginning his own commercial trucking business. See id.

**C.    The Offense Conduct.** There are two kinds of offense conduct in this case. One is the possession with intent to distribute 497.1 grams of cocaine hydrochloride. The second kind of offense conduct in this case concerned Mr. Kelly's possession of a firearm "during and in

---

[3]    Two relatives, Frances L. Kelly (mother) and Raymond D. Elliott (brother-in-law), were both are willing to put up the equity in their homes to assure Mr. Kelly's compliance with his conditions of release. See Ex. 2 (letters from Ms. Kelly and Mr. Elliott).

relation to" a drug trafficking offense. While the defense submits that Mr. Kelly's possession of a firearm underneath the mattress in his bedroom, along with other factors present in this case, satisfies the elements of 18 U.S.C. § 924(c), it should further be noted that the government's own evidence shows that the firearm was possessed primarily for protection in the dangerous southeast neighborhood where Mr. Kelly lived with Lenia Cash, his girlfriend of many years. The government's evidence did not establish that the gun was possessed to facilitate drug trafficking (although, in contrast, Mr. Kelly's admissions at the plea hearing did establish this fact).

      The recorded telephone conversations relied on in this case –the most damning the government could find after **several months** of recording Mr. Kelly's cellular telephone–are entirely consistent with this view. In the first, Mr. Kelly asks Ms. Cash for his gun on July 4th. See Gov. Sent. Mem. at 2. In the next (actually two conversations, which took place back-to-back), Mr. Kelly believes he is about to be robbed by several unknown assailants, and appears to request that Ms. Cash get his gun for him for protection. See Ex. 6 (transcripts of two calls on July 3, 2004). Finally, there is a conversation on July 9 where Mr. Kelly jokes about shooting a friend's dog. The defense respectfully submits that these conversations do not reflect the "typical" case under 18 U.S.C. § 924(c), where there is a more apparent connection between the firearm and the drug trafficking offense.

## **CONCLUSION**

The defense respectfully submits the foregoing in connection with Mr. Kelly's sentencing and as a supplement to the information contained in the PSR.

Respectfully submitted,

_____/s/_____
Jonathan S. Jeffress
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20001
(202) 208-7500, ex. 134